In re BENSEL et al. (Catskill Aqueduct, Section No. 16).

(Supreme Court, Appellate Division, Second Department.   October 18, 1912.)

Appeal from Special Term, Westchester County.

In the matter of the application and petition of John A. Bensel and others to acquire real estate. From an order confirming the report of the commissioners of appraisal, the City of New York appeals. Affirmed.

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and WOODWARD, JJ.

I. J. Beaudrias, of Yonkers, for appellant.

Leo A. Doran, of New York City (Joseph A. Flannery and Benjamin Trapnell, both of New York City, on the brief), for respondent.

PER CURIAM.   Order affirmed, with $10 costs and disbursements.

BURR, J. (dissenting).   The amount awarded in this case is so large that I seriously question the correctness of the finding of the commissioners respecting the same upon any theory. But while I might hesitate to vote for reversal upon the ground that the damages appeared too liberal, it seems to me that the result in this case which offends my sense of justice was due to the adoption of an erroneous theory on the part of the commissioners.

Claimant owned a large tract of land, over 90 acres in extent. A portion thereof, containing about 11¼ acres, and designated on the damage map as parcel No. 1,136, was taken for the purposes of this improvement. Both actual and consequential damages are claimed; the former measured by the value per acre of the land taken, and the latter by the diminished value per acre of the land remaining by reason of such taking. Thus computed, upon the original hearing one of the experts called for the claimant fixed the damages at $61,248, and the other at $66,990. The experts called in behalf of plaintiff appraised the damages at $32,084 and $34,605, respectively. The award which was made, under the circumstances hereinafter disclosed, was $65,000. After the case had been closed and submitted to the commissioners of appraisal for the purpose of making their award, and before they had filed their report, claimant made application to open the case and submit further evidence. Against plaintiff's objection this application was granted, and claimant then offered testimony to the effect that underlying a portion of parcel No. 1,136 there was valuable sand, that the quantity of such sand was 73,330 cubic yards, and that such sand was worth 50 cents a cubic yard. The testimony of claimant's witnesses as to the quantity of sand was so vague and indefinite that it amounted to little more than pure speculation, and the value of the sand as testified to is in part at least affected by the as-

sumption that this sand could be used as a fill for adjoining swale and lowland without any considerable cost of transportation. The extent of this lowland was not proved, but in the opinion of one of claimant's witnesses there was not more than sufficient sand in the strip taken to "bring all the low part up to a fair grade." Another witness called for the claimant testified that, if used only as an ordinary market could be found therefor, "it would take two or three years to take it out." After such testimony claimant's experts as to value were recalled, and each added to his former estimate the sum of $36,665. This difference would be exactly represented by 73,330 cubic yards of sand, valued at 50 cents a yard. Each of the witnesses testified that the only reason which they had for increasing their previous estimates was the evidence just referred to as to the presence of sand on the strip in question and the value thereof. The final estimate of one of claimant's witnesses was therefore $97,913, and of the other $103,665.

Although the items considered by the commissioners in fixing the amount of damage do not appear, in view of the fact that the award (the sum of $65,000) is nearly $4,000 larger than the original estimate of one of claimant's witnesses, and only about $2,000 less than the highest estimate given by any witness in his behalf in the first instance, it is scarcely conceivable that the commissioners did not take into account the evidence subsequently given, which had for its purpose establishing a higher rate of damages by reason of the presence of this sand. If that is so, it seems to me perfectly clear that the commissioners adopted an erroneous rule of damages in this case, and for that reason their report should not have been confirmed. After this additional evidence upon the part of claimant had been received, witnesses were called upon the part of the plaintiff, who testified (and their testimony is uncontradicted) that upon the residue of claimant's land there were also sand deposits nearly twice as great in extent as those estimated to be upon the land taken. If this is so, then the sand upon the land taken had no special value as fill for adjoining lowlands, since claimant could use what still remained to him for that purpose. While the exact amount of lowland is not shown, there is no suggestion that the sand on claimant's remaining land would not be amply sufficient for that purpose. This was followed by evidence that through the ordinary channels in the last 25 years there had been a market in that neighborhood for only about 4,600 yards of sand. Under the circumstances here disclosed, and following the well-established rule, when part only of a tract is taken and both actual and consequential damages are claimed, the commissioners should have limited the proof to the value of the entire tract, taking into consideration, not only the acreage thereof, but the increased value, if any, by reason of a valuable deposit thereon, and then the value of the residue after deducting the strip taken, such value to be computed in the same manner.

Because this rule was not adopted and followed, I think the or-

der confirming the commissioners' report should be reversed, and a rehearing ordered before the same or other commissioners to be appointed.

THOMAS, J., concurs.